UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| AIHONG SHAO, | : | |
| | : | |
| Plaintiff, | : | 3:15-cv-246 |
| | : | |
| v. | : | **COMPLAINT** |
| | : | |
| NEW WORLD TECHNOLOGIES & INNOVATIONS LLC, JULIET ZHANG a/k/a JULIET LUO and HONG LUO, CAERVISION CORP., CAERVISION TECHOLOGY CENTERS INC., | : : : : | JURY TRIAL DEMANDED |
| | : | |
| Defendants. | : | |

**Nature of this Action**

1. This is an action for breach of contract and fraud. Plaintiff was induced to invest her life savings with Defendants in reliance on Defendants' promises that (a) the investment is guaranteed, and (b) the investment would qualify for EB-5, enabling Plaintiff to obtain permanent residency in the United States. Defendants breached their promises: Defendants refused to return Plaintiff's investment despite Plaintiff's demand, and Defendants knew Plaintiff's investment would not qualify for EB-5.

**The Parties**

2. Plaintiff Aihong Shao ("Aihong") is a citizen of China.

3. Defendant New World Technologies & Innovations LLC ("New World") is a limited liability company organized and existing under the laws of Pennsylvania with its principal place of business at 1 Pasquerilla Plaza, Suite 120A, Johnstown, PA 15901. New World's business activities, upon information and belief, occurred within Pennsylvania.

4. Defendant Juliet Zhang a/k/a Juliet Luo and Hong Luo ("Juliet") is, upon information and belief, a citizen of Maryland and resides at 3029 Averley Road, Ijamsville, Maryland 21754.

5. Defendant CaerVision Corp. ("CaerVision") is, upon information and belief, a corporation organized and existing under the laws of Delaware, with a principle place of business at 4539 Metropolitan Court, Frederick, MD 21704.

6. Defendant CaerVision Technology Centers Inc. ("CTCI") is, upon information and belief, a corporation organized and existing under the laws of Delaware, with a principle place of business at 4539 Metropolitan Court, Frederick, MD 21704.

## Jurisdiction and Venue

7. The Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332(a).

8. Venue in this judicial district is proper pursuant to 28 U.S.C. § 1391.

## Factual Background

### Juliet's Promises to Aihong

9. Juliet befriended Aihong.

10. Juliet used this friendship to separate Aihong from her money.

11. Juliet told Aihong that Aihong could make money by investing in a business venture with her husband, Jack Zhang ("Jack").

12. Juliet told Aihong that if Aihong invested $500,000 with Jack, the money would be invested in manner that qualified for EB-5, thereby allowing Aihong to obtain permanent residency in the United States.

13. Juliet told Aihong that if Aihong paid $20,000 in addition to the $500,000 investment, CaerVision would hire an attorney to submit Aihong's application for permanent residency in the United States.

### The Joint Venture Agreement

14. A copy of the fully executed Joint Venture Agreement is annexed hereto as **Exhibit 1**. A certified translation of the Joint Venture Agreement is annexed hereto as **Exhibit 2**.

15. Aihong did not draft the Joint Venture Agreement.

16.     Juliet personally handed the Joint Venture Agreement to Aihong in Chengdu, China on or about June 4, 2009.

17.     Aihong executed the Joint Venture Agreement on June 4, 2009.

18.     Aihong handed the Joint Venture Agreement back to Juliet.

19.     Juliet, upon information and belief, took the Joint Venture Agreement back to the United States and gave it to Jack.

20.     Jack executed the Joint Venture Agreement on behalf of CaerVision and CTCI on or about June 8, 2009.

21.     On or after June 8, 2009, Juliet mailed to Aihong in China a fully executed copy of the Joint Venture Agreement.

22.     The Joint Venture Agreement provides that Aihong and CTCI will form New World.

23.     The Joint Venture Agreement further provides Aihong's "minimal capital injection . . . shall be US$ 520,000 (including legal fees)."

24.     The Joint Venture Agreement further provides New World will make distributions as follows:

- First, distribute US$ 500,000 to the Partner [Aihong] based on the stipulated time frame (5 years).

- Then, based on the corresponding interests in the joint venture, make distributions to the joint venture partners [Aihong and CTCI] in the corresponding percentages according to Article 5.2 of this chapter.

**The Statement of Guarantee**

25.     Before Aihong signed the Joint Venture Agreement on June 4, 2009, Aihong expressed to Juliet her concern about not getting back the monies she would be investing in the joint venture.

26.     Before June 4, 2009, Juliet responded to Aihong's concern by offering to secure the return of Aihong's investment by, among other things, Juliet's interest in real property.

3

27. In reliance on Juliet's offer to secure the return of Aihong's investment, Aihong signed the Joint Venture Agreement on June 4, 2009.

28. Sometime in 2009, Juliet handed to Aihong in China the Statement of Guarantee.

29. A copy of the Statement of Guarantee, without exhibits, is annexed hereto as **Exhibit 3**. A certified translation of the Statement of Guarantee is annexed hereto as **Exhibit 4**.

30. Aihong did not draft the Statement of Guarantee.

31. Juliet executed the Statement of Guarantee on behalf of herself individually and as the authorized representative of New World and CaerVision.

32. The "Whereas" paragraph of the Statement of Guarantee states that Aihong and CaerVision are to establish New World as a joint venture and that Aihong would invest $500,000 in New World.

33. The Statement of Guarantee provides that "the total sum devoted to New World by the investor [Aihong] (a total of five hundred thousand US dollars) shall be retrieved smoothly according to the retrieval schedule."

34. The Statement of Guarantee further provides that the guarantors are New World, CaerVision, and Juliet.

35. The Statement of Guarantee further provides that the order of liability of the guarantors is New World, CaerVision, and Juliet.

36. The Statement of Guarantee further provides:

> New World and CaerVision Inc. shall use its entire assets as guarantee of repayment, and Ms. Hong Luo [Juliet] shall use the following real estate in her possession as collateral:
>
> 1. 11119 Innsbrook Way, Ijamesville, MD 21754, USA.
>
> 2. 2770 Old Lake Wilson Rd, Building B, Kissimee, FL 34747.

37. The Statement of Guarantee further provides Juliet "cannot resell, gift, donate or use any method to change the titleholder of the real property described above . . . ."

**Aihong Transfers Money to Defendants**

38. After Juliet provided the Statement of Guarantee and the fully executed Joint Venture Agreement to Aihong, Juliet gave Aihong instructions on how to transfer money.

39. Juliet instructed Aihong to wire money to Woodsboro Bank, 7360 Guildford Drive, Fredericksburg, MD 21704.

40. Aihong wired $520,000 pursuant to Juliet's instructions.

41. Woodsboro Bank credited account xxxx0706 in the name of New World with $519,920 between July 21, 2009 and September 18, 2009 and, upon information and belief, deducted $80 as its fee for receiving the wire transfers.

**The Fraudulent EB-5 Application**

42. Juliet and/or CaerVision, either directly or through persons acting at their direction, retained David Lu, Esq. to submit on behalf of Aihong an application for permanent residency.

43. David Lu did not communicate directly with Aihong before submitting her application for permanent residency.

44. In preparing Aihong's application, David Lu relied solely on information supplied by Juliet and/or CaerVision, or persons acting at their direction.

45. On September 30, 2009, David Lu filed on behalf of Aihong an I-526 Immigration Petition (the "I-526") with the United States Citizenship and Immigration Services ("USCIS ").

46. The I-526 contains many false representations.

47. The I-526 represents that Aihong invested $519,920 in New World.

48. The foregoing representation is false, as Aihong invested only $500,000 in New World.

49. Aihong transferred $520,000 to a bank account in the name of New World, with $500,000 representing her investment in New World and $20,000 representing the legal fees for Aihong's application for permanent residency.

5

50. Juliet and/or CaerVision knew when the I-526 was submitted to the USCIS that the I-526 falsely represents that Aihong invested $519,920 in New World.

51. The I-526 represents that Exhibit C-5 thereto is the joint venture agreement between Aihong and CTCI concerning New World (the "Fake Joint Venture Agreement").

52. The foregoing representation is false, as Aihong did not enter into the Fake Joint Venture Agreement.

53. The Fake Joint Venture Agreement purports to be dated May 10, 2009, purports to be initialed on every page by Aihong in English, and purports to be signed by Aihong in English.

54. Aihong did not sign or initial the Fake Joint Venture Agreement. The signature on page 8 purporting to be Aihong's signature, and the initials on each page purporting to be Aihong's initials, are forgeries.

55. The Fake Joint Venture Agreement differs from the Joint Venture Agreement entered into by Aihong. For example, Article 10 of the Fake Joint Venture Agreement contains five separately numbered sub-articles, whereas there are only four separately numbered sub-articles in Article 10 of the Joint Venture Agreement entered into by Aihong.

56. Juliet and/or CaerVision knew when the I-526 was submitted to the USCIS that the I-526 falsely represents that the Fake Joint Venture Agreement was the actual agreement between Aihong and CTCI concerning New World.

57. The I-526 represents that Exhibit C-7 thereto is the operating agreement for New World (the "Fake Operating Agreement").

58. The foregoing representation is false, as Aihong did not enter into the Fake Operating Agreement.

59. The last page of the Fake Operating Agreement purports to be signed by Aihong in English.

60. Aihong did not sign the last page of the Fake Operating Agreement.

6

61. Juliet and/or CaerVision, upon information and belief, pasted an electronic image of Aihong's signature on the last page of the Fake Operating Agreement.

62. Before Aihong's signature was pasted on the last page of the Fake Operating Agreement, Juliet had told Aihong that her signature was needed on some documents.

63. Juliet instructed Aihong to sign a blank piece of paper, scan the paper with her signature, and then email the scan to Juliet. Aihong complied with Juliet's request.

64. Before Aihong's signature was pasted on the last page of the Fake Operating Agreement, Aihong had not been given the Fake Operating Agreement or informed of its terms.

65. Juliet and/or CaerVision knew when the I-526 was submitted to the USCIS that the I-526 falsely represents that the Fake Operating Agreement was an operating agreement entered into by Aihong.

66. The I-526 represents that Aihong's investment in New World is an at risk investment.

67. The foregoing representation is false, as Aihong's investment was not at risk because the return of Aihong's investment was guaranteed by the Statement of Guarantee.

68. Juliet and/or CaerVision knew when the I-526 was submitted to the USCIS that the I-526 falsely represents Aihong's investment in New World is an at risk investment.

69. Juliet and/or CaerVision knew when the I-526 was submitted to the USCIS that the I-526 did not comply with USCIS rules and/or regulations because it omits mention of the Statement of Guarantee.

70. The I-526 represents that Aihong is the Chairman and President of New World, is going to be actively involved in the management and decision making of New World, and earns a $50,000 salary.

71. The foregoing representations are false, as Aihong did not have any role in managing New World and did not earn a salary from New World.

72. Juliet and/or CaerVision knew when the I-526 was submitted to the USCIS that the I-526 falsely represents Aihong's role in managing New World and Aihong's salary from New World.

73. The I-526 represents that Aihong signed Part 7 thereto.

74. The foregoing representation is false, as Aihong did not sign Part 7 of the I-526, and the signature on the I-526 is a forgery.

75. Juliet and/or CaerVision knew when the I-526 was submitted to the USCIS that the I-526 falsely represented that Aihong had signed Part 7 thereto.

76. Aihong's application for a permanent residency card pursuant to EB-5 was initially approved.

77. The USCIS Director, California Service Center, revoked the initial approval, finding that (a) Aihong's application had not demonstrated an at risk investment; (b) New World had not created and would not create sufficient employment to satisfy EB-5; (c) Aihong's application committed fraud by its submission of a false sublease, and (d) Aihong's application misrepresented that individuals were employed by New World when, in fact, those individuals were employed by CTCI.

78. On April 17, 2012, the Administrative Appeals Office dismissed the appeal of the decision by the USCIS Director, California Service Center, revoking the initial approval of Aihong's application.

79. Juliet and/or CaerVision retained Cherylle Corpuz, Esq., an attorney in Philadelphia, to move to reopen Aihong's application.

80. The Administrative Appeals Office issued a decision dated February 4, 2014 denying the motion to reopen Aihong's application.

81. A true and correct copy of the decision rendered by the Administrative Appeals Office dated February 4, 2014 is annexed hereto as **Exhibit 5**.

**Control over New World by CaerVision, Juliet, and CTCI**

82. Juliet and CaerVision, upon information and belief, had and did in fact exercise control over New World's bank account at Woodsboro Bank.

83. CaerVision exercised control over selecting the location and cost of New World's office space in Johnstown, PA.

84. CaerVision personnel visited potential office spaces in Johnstown, PA to be used for its joint ventures, including New World.

85. CaerVision personnel caused its joint venture, TC Ventures V, LLC, to enter into a lease for office space at 406 Main Street, Johnstown, PA.

86. CaerVision personnel caused its joint venture, TC Ventures V, LLC, to sublease to New World some of the office space at 406 Main Street, Johnstown, PA.

87. CaerVision, upon information and belief, determined how much money New World paid for its office space at 406 Main Street, Johnstown, PA.

88. In 2010, CaerVision personnel notified the property manager for 406 Main Street, Johnstown, PA that it is concerned about the safety of its employees at 406 Main Street, Johnstown, PA.

89. In October, 2010, CaerVision entered into a lease with Pasquerilla Enterprises, L.P. for office space at One Pasquerilla Plaza, Johnstown, PA. The lease provides that CaerVision cannot sublease the space without the lessor's consent.

90. CaerVision caused New World to occupy space at One Pasquerilla Plaza, Johnstown, PA, but CaerVision did not obtain the lessor's consent to sublease space to New World.

91. CaerVision, upon information and belief, determined how much money New World paid for its office space at One Pasquerilla Plaza, Johnstown, PA.

92. Juliet, CaerVision, and CTCI exercised control over the hiring of New World's employees in Johnstown, PA.

93. Juliet and CaerVision, upon information and belief, caused New World to pay Juliet a salary.

94. CaerVision, upon information and belief, caused New World to delegate managerial authority to Juliet.

95. Juliet, upon information and belief, exercised managerial authority and engaged in acts on behalf of New World.

96. CaerVision, upon information and belief, caused its employees to work for New World.

97. CaerVision, upon information and belief, caused New World to hire CaerVision's employees and pay them salaries.

98. CaerVision and CTCI, upon information and belief, caused CTCI's employees to work for New World.

99. CaerVision and CTCI, upon information and belief, caused New World to hire CTCI's employees and pay them salaries.

100. CaerVision enlisted John Hill Real Estate located in Johnstown, PA to sign a letter dated March 8, 2011 that CaerVision used in response to the denial of EB-5 applications by Aihong and others.

101. CaerVision enlisted the Honorable Mark S. Critz, a Member of the United States House of Representatives for the 12th District, Pennsylvania in Johnstown, PA, to sign a letter dated March 10, 2011 that CaerVision used in response to the denial of EB-5 applications by Aihong and others.

102. Jack on behalf of CaerVision signed a statement dated March 8, 2011 that CaerVision used in response to the denial of EB-5 applications by Aihong and others.

103. Jack's statement provides (a) CaerVision received money from Aihong; (b) CaerVision formed New World; (c) New World is a joint venture with CaerVision; and (d) CaerVision started New World with the help of CaerVision personnel.

**Defendants Refuse To Return Aihong's Money**

104. In December, 2014, Aihong's husband and daughter met with Juliet and Jack in Maryland.

105. On behalf of Aihong, Aihong's husband asked Juliet and Jack to pay $500,000 to Aihong pursuant to the Joint Venture Agreement and the Statement of Guarantee.

106. In response to the request made by Aihong's husband on behalf of Aihong, Juliet and Jack said that they had transferred their interest in New World to new investors.

107. In response to the request made by Aihong's husband on behalf of Aihong, New World, CaerVision, CTCI, and Juliet did not, pursuant to the Joint Venture Agreement and the Statement of Guarantee, return to Aihong the $500,000 she invested in New World.

108. To date, none of $500,000 invested by Aihong in New World has been returned to her pursuant to the Joint Venture Agreement and the Statement of Guarantee.

**Defendants Refuse To Show Books and Records to Aihong**

109. In or about 2010, Aihong asked Juliet for financial and accounting records of New World.

110. Juliet did not provide to Aihong any financial and accounting records of New World.

**Count I**
Breach of Contract
(Breach of the Joint Venture Agreement)
(Against CaerVision Corp., CaerVision Technology
Centers Inc., and New World Technology Centers Inc.)

111. Aihong incorporates by reference the matters alleged in paragraphs 1 through 110 above.

112. CaerVision, CTCI, and New World had a contractual obligation pursuant to the Joint Venture Agreement to pay $500,000 to Aihong no later than September 18, 2014, which is five years from September 18, 2009 when New World's account at Woodsboro Bank had been credited with $519,920 from wire transfers by Aihong.

113.   CaerVision, CTCI, and New World breached their contractual obligation pay $500,000 to Aihong.

114.   Aihong has been damaged by the foregoing breach of the Joint Venture Agreement by CaerVision, CTCI, and New World.

**Count II**
Breach of Contract
(Breach of the Statement of Guarantee)
(Against Juliet Zhang, New World Technology
Centers Inc., and CaerVision Corp.)

115.   Aihong incorporates by reference the matters alleged in paragraphs 1 through 114 above.

116.   Juliet, New World, and CaerVision had a contractual obligation to pay $500,000 to Aihong pursuant to the Statement of Guarantee.

117.   Juliet, New World, and CaerVision breached their contractual obligation pay $500,000 to Aihong pursuant to the Statement of Guarantee.

118.   Juliet had a contractual obligation pursuant to the Statement of Guarantee to refrain from transferring title of the real property identified in Article V of the Statement of Guarantee.

119.   Juliet breached her contractual obligation pursuant to the Statement of Guarantee to refrain from transferring title of the real property identified in Article V of the Statement of Guarantee, because Juliet and Jack sold the real property located at 11119 Innsbrook Way, Ijamesville, MD 21754 on or about January 16, 2013.

120.   Aihong has been damaged by the foregoing breach of the Statement of Guarantee by Juliet, New World, and CaerVision.

## Count III
### Breach of Contract
(Breach of Promise To Obtain Permanent Residency for Aihong)
(Against Juliet Zhang and CaerVision Corp.)

121.    Aihong incorporates by reference the matters alleged in paragraphs 1 through 120 above.

122.    Juliet promised Aihong that Juliet and CaerVision would obtain for Aihong permanent residency in the United States if Aihong transferred $20,000 for legal fees in connection with Aihong's application.

123.    Juliet and CaerVision breached the foregoing promise.

124.    Aihong has been damaged by the foregoing breach of contract by Juliet and CaerVision.

## Count IV
### Fraud
(Against Juliet Zhang)

125.    Aihong incorporates by reference the matters alleged in paragraphs 1 through 124 above.

126.    Juliet induced Aihong to transfer $520,000 by fraudulently misrepresenting to Aihong that she held title to the real property identified in Article V of the Statement of Guarantee.

127.    When Juliet made the foregoing fraudulent misrepresentation, she did not hold title to the real property identified in Article V of the Statement of Guarantee.

128.    At the time Juliet provided the Statement of Guarantee to Aihong, Juliet did not, upon information and belief, individually hold title to the real property located 11119 Innsbrook Way, Ijamesville, MD 21754.

129.    At the time Juliet provided the Statement of Guarantee to Aihong, Juliet did not, upon information and belief, hold title to the real property located 2770 Old Lake Wilson Rd, Building B, Kissimee, FL 34747, as that real property was a time-share property called Westgate Vacation Villas.

130. Juliet induced Aihong to transfer $520,000 by fraudulently misrepresenting to Aihong that the investment pursuant to the Joint Venture Agreement would qualify for EB-5.

131. When Juliet made the foregoing fraudulent misrepresentation, she knew that the investment pursuant to the Joint Venture Agreement would not qualify for EB-5.

132. Juliet had the intent to deceive Aihong and acted with malice when she made the foregoing fraudulent misrepresentations.

133. Aihong reasonably relied upon the foregoing fraudulent misrepresentations made by Juliet and transferred $520,000 to New World.

134. Aihong has been damaged by the foregoing fraudulent misrepresentations made by Juliet.

**WHEREFORE**, Plaintiff Aihong Shao respectfully requests this Honorable Court to enter judgment in her favor as follows:

(a) against Defendants CaerVision Corp., CaerVision Technology Centers Inc., and New World Technologies & Innovations LLC on Count I (breach of the Joint Venture Agreement) in the amount of $500,000, jointly and severally, plus pre-judgment interest;

(b) against Defendants Juliet Zhang, CaerVision Corp., and New World Technologies & Innovations LLC on Count II (breach of the Statement of Guarantee) in the amount of $500,000, jointly and severally, plus pre-judgment interest;

(c) against Defendants Juliet Zhang and CaerVision Corp. on Count III (breach of contract to obtain permanent residency for Aihong) in the amount of $20,000, jointly and severally, plus pre-judgment interest;

(d) against Defendant Juliet Zhang on Count IV (fraud) in the amount of $520,000, plus damages in an amount to be determined at trial to compensate Aihong for the finding by the USCIS that Aihong had committed fraud, plus punitive damages in an amount to be determined at trial, plus pre-judgment interest; and

(e) costs in prosecuting this action, as well as such other and further relief as the Court deems just and proper.

Dated:  September 24, 2015				GREGG H. KANTER LAW OFFICE LLC


						By:  s/  Gregg Kanter
						       Gregg Kanter
						2222 Pine Street
						Philadelphia, PA  19103
						Tel:  (917) 494-5317
						Fax:  (215) 546-2507
						Email:  greggkanter@yahoo.com
						PA 64789
						Attorney for Plaintiff Shao Aihong